No. 16-241

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., Plaintiff-Appellant, vs. MY OTHER BAG, INC., Defendant-Appellee. | Appeal from the United States District Court for the Southern District of New York<br>No. 14 Civ. 3419 (JMF)<br>Honorable Jesse M. Furman District Judge |

# PETITION OF PLAINTIFF-APPELLANT FOR REHEARING *EN BANC*

Robert E. Shapiro
Wendi E. Sloane
Sharon E. Calhoun
Hannah Y. Jurowicz
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
200 West Madison St, Suite 3900
Chicago, Illinois 60606
(312) 984-3100

Jonathan D. Lupkin (JL 0792)
LUPKIN & ASSOCIATES PLLC
26 Broadway, 19th Floor
New York, New York 10004
(646) 367-2722

Attorneys for Plaintiff-Appellant Louis Vuitton Malletier, S.A.

DATED: January 5, 2017

# TABLE OF CONTENTS

ARGUMENT ....................................................................................................4

LOUIS VUITTON MEETS THE STANDARD FOR REHEARING *EN BANC* ..........................4

A. Factual and Procedural Background. ....................................................4

B. The Panel's Decision Conflicts with Supreme Court and Second Circuit Precedent on What Constitutes Parody. ..............................................8

C. The Panel's Decision Conflicts with the Supreme Court's Decision in *Hana Financial* on How to Determine Commercial Impression. ..........................13

D. The Panel's Decision Will Seriously Undermine Congress's Purposes Under TDRA.........................................................................................16

CONCLUSION ................................................................................................17

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 35(B) AND 32(C) ....................18

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) .......... 3-4, 11

*DC Comics Inc. v. Reel Fantasy, Inc.*,
696 F.2d 24 (2d Cir. 1982) .......... 14

*Elvis Presley Enterprises, Inc. v. Capece*,
141 F.3d 188 (5th Cir. 1998) .......... 11

*Hana Financial, Inc. v. Hana Bank*,
135 S. Ct. 907 (2015) .......... 3, 13, 14, 15

*Harley-Davidson, Inc. v. Grottanelli*,
164 F.3d 806 (2d Cir. 1999) .......... passim

*Jasco Tools, Inc. v. Dana Corp.*,
574 F.3d 129 (2d Cir. 2009) .......... 14

*Louis Vuitton Malletier, S.A. v. Burlington Coat Factory Warehouse Corp.*,
426 F.3d 532 (2d Cir. 2005) .......... 3

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
No. 16-241-CV, 2016 WL 7436489 (2d Cir. Dec. 22, 2016) .......... 5, 8, 11, 13

*Louis Vuitton Malletier v. My Other Bag, Inc.*,
156 F. Supp. 3d 425, 436 (S.D.N.Y. 2016) .......... 1, 8, 10, 13

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
588 F.3d 97 (2d Cir. 2009) .......... passim

*TCA Television Corp. v. McCollum*,
839 F.3d 168 (2016) .......... 2, 6, 13

**STATUTES**

15 U.S.C. § 1125 .......... 1, 9, 10

17 U.S.C. § 107 ........................................................................ 1

17 U.S.C. § 501 ........................................................................ 1

**OTHER AUTHORITIES**

Fed. R. App. P. 32 ........................................................................ 18

Fed. R. App. P. 35 ........................................................................ 1, 18

Fed. R. Civ. P. 56 ........................................................................ 14

## FED. R. APP. P. 35 STATEMENT

The panel's decision in this case presents two issues of critical importance for a determination of parody under the federal Trademark Dilution Revision Act ("**TDRA**"), 15 U.S.C. § 1125(c), Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the Copyright Act of 1976, 17 U.S.C. §§ 107, 501. These issues are: 1) what legal requirements are there for parody under these statutes; and 2) by whom is the determination of parody to be made. In both instances, the panel departed significantly from established precedent in this Circuit and the teachings of Supreme Court jurisprudence. Louis Vuitton Malletier, S.A. ("**Louis Vuitton**") therefore respectfully requests, under Rule 35 of the Federal Rules of Appellate Procedure, that this Court rehear this appeal *en banc.*

The district court's decision in this case based its finding of a parody solely on its subjective view that the products of defendant-appellee My Other Bag, Inc. ("**MOB**") – which included canvas tote bags bearing nearly-identical renderings of Louis Vuitton's undisputedly famous trademarks and two of its copyrights – were obviously a "joke" and social commentary on "society's larger obsession with status symbols" such as Louis Vuitton handbags. *Louis Vuitton Malletier v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 436 (S.D.N.Y. 2016) ("***My Other Bag I***").

In doing so, it did not consult, indeed made no mention of, the record evidence, which uniformly contradicted its conclusions. That evidence showed

that MOB spoke of its products only as an "ode" to "iconic" handbags that MOB's founder loved and that she marketed as cute and stylish tote bags to consumers who owned or aspired to own designer handbags, including those of Louis Vuitton. The record evidence also established that consumers did not perceive MOB's products as a joke, or even social commentary, but rather as a fashion accessory to complement, or even substitute for, the LV bags they owned or wanted. (CA89-90; JA913-959; JA1033-1035.)

Affirming the district court, the panel likewise substituted its view that MOB's products were a "joke" intended to make fun of LV's luxury image. It too made no mention of any of the record evidence, which showed a very different intention on MOB's part and a contrary impression among its customers.

Rehearing e*n banc* on these determinations is necessary under Rule 35 of the Federal Rules of Appellate Procedure for two independent reasons:

First, the panel's decision conflicts with this Court's prior decisions in *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009) ("***Starbucks IV***"), *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806 (2d Cir. 1999), and *TCA Television Corp. v. McCollum*, 839 F.3d 168 (2016), among other decisions, which hold that a mere humorous use or "gentle satire" of another's trademark for commercial purposes does not meet the legal requirements of a parody, particularly when the claim of parody comes only after-the-fact and is

contrary to record evidence. Both TDRA and numerous decisions of this Court establish that a parody must be directed *at the senior user or the senior user's trademark itself*, and cannot be merely vague social criticism or comment, particularly if used to promote and sell defendant's own products. Supreme Court precedent in the copyright context confirms this view. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994) ("If…the commentary has no critical bearing on the substance or style of the original composition, which the alleged infringer merely uses to get attention or to avoid the drudgery in working up something fresh, the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger."). As a result, the decision of the district court, as affirmed by the panel, essentially rewrites and expands the definition of parody in a manner not consistent with existing precedent.

Second, the panel's decision conflicts with the decisions of the Supreme Court in *Hana Financial, Inc. v. Hana Bank*, 135 S. Ct. 907 (2015), and this Court in *Louis Vuitton Malletier, S.A. v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532 (2d Cir. 2005), among many others, holding that, under trademark law, the question of commercial impression (which is part of the parody inquiry) is a fact question for the jury, not an issue to be determined by the court unless there is no conflicting evidence. *See also Campbell*, 510 U.S. at 582 (1994) (threshold

question when parody is raised in defense of a copyright infringement claim is "whether a parodic character *may reasonably be perceived*") (emphasis added). Both the district court and the panel arrogated the decision regarding parody to themselves, notwithstanding ample record evidence from which a jury could conclude differently.

Because both individually and in tandem these two departures from existing law will fundamentally undermine the purposes of TDRA, rehearing is necessary.

## ARGUMENT

## LOUIS VUITTON MEETS THE STANDARD FOR REHEARING *EN BANC*

Although rehearing *en banc* is not favored, this case presents questions of exceptional importance regarding the legal requirements for a parody under TDRA, the Lanham Act, and the Copyright Act, and who should make this determination in the presence of contested record evidence.

### A. Factual and Procedural Background.

This case arises out of MOB's use of renderings of famous designer handbags on its line of canvas tote bags. Two years after its launch, MOB added tote bags with renderings of three styles of Louis Vuitton handbags bearing Louis Vuitton's Toile Monogram, Damier, or Monogram Multicolore trademarks (the "**LV Marks**"), all of which are incontestably famous. The Monogram Multicolore designs are also the subject of two registered copyrights.

Contrary to the panel's opinion, the record evidence established that MOB did not intend its products as a "joke on Louis Vuitton's luxury image" or as "a parody of [Louis Vuitton's] luxury image," and never promoted them as such. *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, No. 16-241-CV, 2016 WL 7436489, at *1 (2d Cir. Dec. 22, 2016) ("***My Other Bag II***"). Rather, MOB's products were inspired by a love of designer handbags by MOB's owner, who described herself as a "designer handbag junkie" and her products as "an ode to handbags women love, bags that are the fabric of our culture and history." (CA77; JA886.)

MOB's owner admitted that "[t]he original idea behind My Other Bag was to be a "cute fashion reusable tote bag for grocery shopping." (CA78.) She acknowledged that "designer handbags is [sic] 100% the inspiration behind this [product] line…." (*Id.*) She described it as "such an honor … to take something I love and … am so inspired by and put it on a product that other women can relate to and love as well." (*Id.*) MOB billed its products to its customers as "a perfect complement to these bags we love" – their "other bag" – and invited consumers to "carry it in addition to [their] designer handbag or alone." (CA77; JA886-82.)

MOB's target consumers were women who owned designer handbags or who were "[n]ot ready to splurge on a Chanel, Louis Vuitton, or Yves St. Laurent handbag," or who "want to do … grocery shopping in style but not carry groceries

in [their] designer purse." (CA79; JA951.) Rather than parodying LV's luxury image, MOB promoted the LV Marks as a "beacon" to these customers to buy what MOB promoted as fashionable canvas tote bags with a "high-fashion designer look" (CA86; JA894-96) and a means to "mimic your favorite designer's iconic style." (CA-88; CA314.)[1]

On its social media sites, MOB showed photographs of its tote bags next to authentic luxury handbags, including those of Louis Vuitton. (CA86; JA923-25; JA926; JA934; JA935.) It touted its association with celebrities pictured carrying its products alongside designer handbags. (CA87; JA1014-25.) For one of its products bearing the LV Marks, MOB's product description stated, "It's a hard life being a trendsetter, but such is your fate when you rock our chic Zoey tote. Thank us later for giving you this 'other bag' to throw your onions in instead of your speedy."[2] (CA86; JA1011.)

Although MOB's founder claimed to have devised the name "My Other Bag" from bumper stickers reading "My Other Car Is … A Jaguar," she was unable to offer any instance in any marketing item or public document in which

---

[1] As this Court has explained in the copyright context, "there is 'nothing transformative about using an original work in the manner it was made to be used." *TCA Television Corp.*, 839 F.3d at 182–83 (internal quotations omitted).

[2] A "Speedy" is a type of Louis Vuitton bag.

that trope was used. The evidence was that the name "My Other Bag" (not "My Other Bag *is*…") appeared prominently on only the obverse side from that with pictures of bags bearing the LV Marks. Louis Vuitton also makes canvas tote bags, on some of which it puts "cartoonish" pictures of a designer bag. (CA222-224; CA279-283; JA96; CA219-220; JA99.)

MOB never attempted to characterize its products as a parody until after it was threatened with litigation. Then it changed its website to state that its totes were "playfully parodying" designer handbags. (CA88-89; JA907.) The record showed no instance in which consumers perceived MOB's products as a joke, or even social commentary. They saw it rather as a fashion accessory to complement, or substitute for, their designer bags, as MOB originally intended. (CA89-90; JA913-59; JA1033-35.)

On this basis, Louis Vuitton filed this action, asserting claims for trademark dilution, trademark infringement, and copyright infringement. After discovery closed, Louis Vuitton sought summary judgment on its dilution and copyright claims, or at least a trial on all of its claims (including trademark infringement). MOB cross-moved to dismiss all of Louis Vuitton's claims. The district court denied Louis Vuitton's summary judgment motion and granted that of MOB, rejecting even a trial on the record evidence regarding MOB's intentions and consumer perception.

The district court based its decision on its subjective view that MOB's products were a "joke" derived from the "My Other Car Is A [Luxury Brand]" bumper sticker trope (which was never mentioned in MOB's advertising or referenced by consumers) and therefore a parody under trademark law. *My Other Bag I*, 156 F. Supp. at 430–31. The district court also found that MOB's use of the LV Marks was appropriate social commentary because it used the LV Marks as a symbol for "society's larger obsession with status symbols." *Id.* at 436. It provided no record citations for these conclusions.

The panel affirmed, again finding that "a parody of LV's luxury image is the very point of MOB's plebian product" and the "fact that the joke on LV's luxury image is gentle, and possibly even complimentary to LV, does not preclude it from being a parody." *My Other Bag II*, 2016 WL 7436489, at *1. Like the district court, the panel made no mention of the record evidence about MOB's intentions and consumer perception, both of which were directly to the contrary.

**B. The Panel's Decision Conflicts with Supreme Court and <u>Second Circuit Precedent on What Constitutes Parody</u>.**

As this Court recognized in *Starbucks IV*, the parody exclusion under TDRA does not apply unless the defendant's use of the plaintiff's famous trademark is for the purpose of "identifying and parodying, criticizing, or commenting upon the

famous mark owner or the goods or services of the famous mark owner." 15 U.S.C. § 1125(c)(3)(A)(ii) (emphasis added).

Following this statutory mandate, this Court held in *Starbucks IV* that, under TDRA, a parody must be *directed at* the trademark owner or its trademark. *Starbucks IV*, 588 F.3d at 113. And, quoting *Harley-Davidson*, 164 F.3d at 813, the Court stressed that "'[p]arodic use is sharply limited' in circumstances where 'an alleged parody of a competitor's mark [is used] to sell a competing product.'" *Starbucks IV*, 588 F.3d at 113. Humor, even if present, is insufficient, particularly where the humor is nothing more than a "subtle satire" of the plaintiff's marks. *Id.* Instead, this Court looked to the defendant's intent and consumer perception to determine whether the defendant's use of the plaintiff's marks was designed to parody those marks. *Id.*

Here, the district court found it "self-evident that MOB did mean to say something about Louis Vuitton specifically":

> The quip "My Other Bag … is a Louis Vuitton," printed on a workhorse canvas bag, derives its humor from a constellation of features – including the features of the canvas bag itself, society's larger obsession with status symbols, *and* the meticulously promoted image of expensive taste (or showy status) that Louis Vuitton handbags have, to many, come to symbolize.… MOB's tote bags would not make their point, and certainly would not be funny, if the obverse of the tote merely depicted some generic handbag.

*Id.* at 436–37.

A careful reading of this statement demonstrates that it is directly contrary to both the record and the law in every respect. First, the record is undisputed that none of MOB's products bears the statement "My Other Bag…is a Louis Vuitton." All of MOB's bags bear the statement "My Other Bag…" on the obverse side (SpA30-31), and MOB's marketing all emphasized that its products could be the "other bag" a consumer uses to handle daily matters while still connoting the luxury of a Louis Vuitton bag.

Second, the district court imputes to MOB an intention it never had. There is no evidence MOB was poking fun at, or even commenting on, "society's larger obsession with status symbols." *My Other Bag I,* 156 F. Supp. at 436. Rather, *it wanted that status for its own bags*, by associating with Louis Vuitton. The district court was expressing only its own reaction to the bags, based solely on MOB's after-the-fact claims that something different was intended, without any evidence consumers also perceived them as the court did.

As such, the district court's reasoning directly conflicted with both TDRA itself and this Court's decisions in *Starbucks IV* and *Harley-Davidson*. By its express terms, TDRA requires a parody to comment "upon" the trademark owner or its products. 15 U.S.C. §1125(c)(3)(A)(ii). Under these terms, there can be no such thing as an accidental parody. Where a defendant is using the plaintiff's trademark merely to sell its own products, even if (unlike here) it has a broader

social commentary in mind, parody is not implicated. *See also Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 200 (5th Cir. 1998) (no parody where defendant used plaintiff's "Velvet Elvis" mark to parody faddish bars of the 1960s rather than Elvis Presley).

The panel's affirmance provided no better basis for this outcome. It asserted that "a parody of LV's luxury image is the very point of MOB's plebeian product," but cited no record evidence for this proposition. *My Other Bag II*, 2016 WL 7436489, at *1. Indeed, tacitly acknowledging that the record evidence showed that MOB did *not* intend to criticize or ridicule Louis Vuitton, the panel also held that the "fact that the joke on LV's luxury image is gentle, and possibly even complimentary to LV, does not preclude it from being a parody." *Id.* Not only does this not *prove* it is parody, however, but this holding conflicts with both *Harley-Davidson* and *Starbucks IV*.

Indeed, in *Harley-Davidson*, 165 F.3d at 813, this Court found that the Supreme Court's parody explication in the copyright case of *Campbell v. Acuiff-Rose Music, Inc.*, 510 U.S. 569 (1994), was applicable to trademarks as well. According to the Supreme Court, the comment must be on the author's work and must have "some critical bearing on the substance or style of the original composition." *Id.* at 580. The panel identified no such impact here.

In *Starbucks IV*, this Court likewise rejected the application of the parody exclusion where the defendant's use of the Charbucks marks was "at most a subtle satire" of the Starbucks marks. 588 F.3d at 113. In that case, the defendant had testified that the inspiration for the Charbucks mark came directly from Starbucks' tendency to roast its products more darkly. The marks were "promoted not as satire or irreverent commentary of Starbucks but, rather, as a beacon to identify Charbucks as a coffee that competes at the same level and quality as Starbucks." *Id.* It was insufficient that this Court found "some humor in the 'Char'bucks as a reference to the dark roast of the Starbucks coffees," and the defendant's "claim of humor fail[ed] to demonstrate clear parody." *Id.*

Thus, humor or "subtle satire," which was the foundation of the district court and panel decisions, has previously been held to be an insufficient basis to establish parody, particularly where the defendant did not intend to parody the plaintiff or its mark and did not promote its products as a parody. There was no parodic intention here, nor any evidence consumers perceived a parody, but only an impermissible use by MOB of the plaintiff's marks to promote and sell its own products. *Harley-Davidson*, 164 F.3d at 813. For these reasons, the decision of

the district court and the panel's summary order conflict with *Harley-Davidson* and *Starbucks IV*, making rehearing *en banc* necessary.[3]

### C. The Panel's Decision Conflicts with the Supreme Court's Decision in *Hana Financial* on How to Determine Commercial Impression.

The district court and the panel determined by themselves that the commercial impression of MOB's use of the LV Marks was to create a joke. In making this determination, they completely disregarded the evidence to the contrary that MOB's actual intent was to sell its own bags as stylish and fashionable and a complement to, or even substitute for, the designer handbags its customers love. (CA77; JA886-82.)[4] The district court and the panel likewise substituted their own views for how consumers would perceive MOB's use of the LV Marks, deciding the issue of commercial impression as a matter of law on that basis.

---

[3] The district court and panel decisions also conflict with *TCA Television Corp. v. McCollum*, 839 F.3d 168 (2016), where this Court found that extensive borrowing of a copyrighted work for commercial exploitation weighs strongly against fair use. *Id.* at 183-84.

[4] The district court found it an "obvious" joke. *My Other Bag I*, 156 F. Supp. 3d at 430. The panel found that MOB's "drawing on a product that is such a ***conscious*** departure from LV's image of luxury – in combination with the slogan 'My other bag' – as to convey that MOB's tote bags are *not* LV bags" are instead a joke. *My Other Bag II*, 2016 WL 7436489, at *1 (first emphasis added.)

This directly conflicts with the Supreme Court's recent decision in *Hana Financial, Inc. v. Hana Bank,* 135 S. Ct. 907 (2015). In *Hana Financial,* the Supreme Court held, in the analogous trademark tacking context,[5] that where a trademark question "operates from the perspective of an ordinarily purchaser," a jury should make that determination. *Id.* at 909. A judge is not entitled to resolve the question of commercial impression on summary judgment unless the record shows no issue of material fact. *Id.* at 911. Numerous decisions of this Circuit are to the same effect. *See, e.g., Jasco Tools, Inc. v. Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009) ("'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'") (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000)); *DC Comics Inc. v. Reel Fantasy, Inc.*, 696 F.2d 24, 26-7 (2d Cir. 1982) (Disputed issues of material fact, such as "the probable or actual actions and reactions of prospective purchasers" and consumers' perceptions of defendants' use of plaintiff's trademarks, "are inappropriate [for conclusion] on a motion for summary judgment.") (citation omitted); *see also* Fed. R. Civ. P. 56(a) (Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

---

[5] Trademark tacking requires that the original and revised trademarks create the same, continuing commercial impression.

*Hana Financial*, and these Second Circuit cases, prohibit the district court and the panel from substituting their own views of commercial impression in the face of a record that did not show that MOB ever intended its use of the LV Marks as a joke or that consumers took it that way. Louis Vuitton presented unrefuted evidence that MOB's products were promoted and perceived as fashion accessories for women who love designer handbags. For example, a fashion blogger described the MOB bags as "cute" and "fashionable," with an "amazing design that looks like you're [sic] really expensive hand bags like Celine, Louis Vuitton, to name a few..." (JA916.) And consumers clearly viewed them that way. As one consumer wrote, "…I purchased my first tote the other day and I think these are fabulous. I have a [sic] LV Speedy and I treat it like a child – having a canvas tote with style is the perfect in between…." (JA1035.) This evidence established that Louis Vuitton was itself entitled to summary judgment or, at a minimum a trial to put the evidence before the jury.

The district court and the panel impermissibly disregarded this evidence, substituting their own views of the commercial impression of MOB's use of the LV Marks. Because this conflicts with the Supreme Court's decision in *Hana Financial* and prior decisions of this Circuit, rehearing *en banc* is necessary.

### D. **The Panel's Decision Will Seriously Undermine Congress's Purposes Under TDRA.**

The effect of the panel's decision is to eviscerate TDRA and its associated trademark and copyright statutes. Now, a person using another's famous trademark can escape liability by arguing, after-the-fact, that the effect is humorous or really a joke, or some kind of social satire. If, despite the evidence, a court itself finds the matter humorous, the junior user's use of the trademarks for its own commercial gain will go unchecked, creating a likelihood of blurring the distinctiveness of the famous trademark it is using. Because TDRA relates exclusively to famous marks, there is always a risk that the junior user can, with a lesser product, find some reason to claim a "gentle satire" or a joke, thereby free riding on the investment the trademark owner has made in its marks.

This is exactly what happened in this case. MOB doubtless would have sold no handbags at all had it not affixed the Louis Vuitton or other designer trademarks to its own bags, exploiting their fame and distinctiveness for its own gain. As this is the very harm TDRA was designed to remedy, the effect will be to prevent the statute (and the associated Lanham Act and copyright provisions) from achieving their express purposes.

## CONCLUSION

Appellant Louis Vuitton therefore respectfully request that this appeal be granted rehearing *en banc*.

DATED: January 5, 2017

Respectfully Submitted,

By: ____/s/ Robert E. Shapiro_________
Robert E. Shapiro
Wendi E. Sloane
Sharon E. Calhoun
Hannah Y. Jurowicz
BARACK FERRAZZANO
KIRSCHBAUM & NAGELBERG LLP
200 West Madison St, Suite 3900
Chicago, Illinois 60606
(312) 984-3100

Jonathan D. Lupkin (JL 0792)
LUPKIN & ASSOCIATES PLLC
26 Broadway, 19th Floor
New York, New York 10004
(646) 367-2722

*Attorneys for Plaintiff-Appellant Louis Vuitton Malletier, S.A.*

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 35(b) and 32(c)**

1. This brief complies with the type-volume limitations of Fed. R. App. P. 35(b)(2) and 35(b)(3) because this brief contains 3,602 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 Times New Roman font in size 14.

DATED: January 5, 2017

/s/ Robert E. Shapiro
*One of the Attorneys for Plaintiff-Appellant Louis Vuitton Malletier, S.A.*

## CERTIFICATE OF SERVICE

I, Hannah Y. Jurowicz, an attorney, hereby certify that I caused a copy of the foregoing **Petition of Plaintiff-Appellant for Rehearing *En Banc*** to be served on all counsel of record in this appeal on this 5th day of January, 2017, via the Court's ECF system.

DATED: January 5, 2017

Respectfully submitted,

/s/ Hannah Y. Jurowicz
*One of the Attorneys for Plaintiff-Appellant Louis Vuitton Malletier, S.A.*

# ADDENDUM

16-241-cv
Louis Vuitton Malletier S.A. v. My Other Bag, Inc.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of December, two thousand sixteen.

PRESENT: GUIDO CALABRESI,
REENA RAGGI,
GERARD E. LYNCH,
*Circuit Judges*.

------------------------------------------------------------------

LOUIS VUITTON MALLETIER, S.A.,
*Plaintiff-Appellant*,

v. No. 16-241-cv

MY OTHER BAG, INC.,
*Defendant-Appellee*.

------------------------------------------------------------------

APPEARING FOR APPELLANT: ROBERT D. SHAPIRO, Barack Ferrazzano Kirschbaum & Nagelberg LLP, Chicago, Illinois.

APPEARING FOR APPELLEE: DAVID S. KORZENIK (Terence P. Keegan, *on the brief*), Miller Korzenik Sommers Rayman LLP, New York, New York; Brian J. Philpott, Corey Donaldson, *on the brief*, Koppel, Patrick, Heybl & Philpott, Westlake Village, California.

Appeal from a judgment of the United States District Court for the Southern District of New York (Jesse M. Furman, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on January 8, 2016, is AFFIRMED.

Plaintiff Louis Vuitton Malletier, S.A. ("LV") appeals from an award of summary judgment in favor of My Other Bag, Inc. ("MOB") on LV's claims under federal and state trademark and copyright law. *See* 15 U.S.C. §§ 1114, 1125; 17 U.S.C. § 501; N.Y. Gen. Bus. Law § 360–l. We review an award of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor. *See, e.g.*, *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm for substantially the reasons stated by the district court in its thorough and well reasoned opinion. *See Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425 (S.D.N.Y. 2016).

1. <u>Trademark Infringement</u>

LV submits that the district court ignored or discounted favorable record evidence during its application of the non-exclusive, eight-factor *Polaroid* balancing test, *see Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961), and thereby wrongly concluded that there was no likelihood of consumer confusion between LV's

and MOB's products. The argument fails because, whether we review the district court's findings as to each *Polaroid* factor deferentially, *see Playtex Prods., Inc. v. Ga.-Pac. Corp.*, 390 F.3d 158, 162 (2d Cir. 2004), or *de novo*, *see generally Kelly–Brown v. Winfrey*, No. 15-697-CV, 2016 WL 4945415, at *2 n.3 (2d Cir. Sept. 16, 2016), we reach the same conclusion. Specifically, obvious differences in MOB's mimicking of LV's mark, the lack of market proximity between the products at issue, and minimal, unconvincing evidence of consumer confusion compel a judgment in favor of MOB on LV's trademark infringement claim. Accordingly, we affirm this part of the summary judgment award to MOB.

2. Trademark Dilution

LV argues that the district court erred in finding as a matter of law that the use of its marks on MOB's tote bags was parodic, bringing it within the "fair use" exclusion from dilution liability. *See* 15 U.S.C. § 1125(c)(3). Whether parody is properly identified before or after conducting the six-factor dilution analysis stated in § 1125(c)(2)(B), *see generally Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 112 (2d Cir. 2009) (assuming without deciding that factor analysis should be conducted first), the district court correctly awarded judgment to MOB.

"A parody must convey two simultaneous—and contradictory—messages: that it is the original, but also that it is not the original and is instead a parody." *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 503 (2d Cir. 1996) (quoting *Cliffs Notes*,

*Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989)). MOB's bags do precisely that. At the same time that they mimic LV's designs and handbags in a way that is recognizable, they do so as a drawing on a product that is such a conscious departure from LV's image of luxury—in combination with the slogan "My other bag"—as to convey that MOB's tote bags are *not* LV handbags. The fact that the joke on LV's luxury image is gentle, and possibly even complimentary to LV, does not preclude it from being a parody. *See Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d at 435–38; *see also L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 34 (1st Cir. 1987) ("[A] trademark parody reminds us that we are free to laugh at the images and associations linked with the mark . . . [or provides] entertainment conveyed by juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner."). Indeed, a parody of LV's luxury image is the very point of MOB's plebian product. That distinguishes this case from ones cited by LV where a trademark was used merely to "promote" or "sell" goods and services, which is impermissible. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d at 115 (using "Charbucks" to identify coffee blend as one competing at same level and quality as Starbucks); *Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 813 (2d Cir. 1999) (using Harley-Davidson logo to advertise motorcycle repair shop).

LV nevertheless contends that MOB is not entitled to a fair-use dilution defense because MOB uses LV's marks as a "designation of source." 15 U.S.C.

§ 1125(c)(3)(A). The district court, however, determined that the testimony of MOB's CEO, upon which LV principally relies to support this argument, unambiguously refers to the likelihood of consumer confusion, not the designation of source. *See Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d at 437–38 (citing J.A. 350–51). Our review of the transcript does not suggest otherwise. In any event, the nature of MOB's business—it sells quite ordinary tote bags with drawings of various luxury-brand handbags, not just LV's, printed thereon—and the presence of "My other bag," an undisputed designation of source, on one side of each bag, independently support summary judgment for MOB on this designation-of-source issue.

Accordingly, we affirm the award of summary judgment to MOB on LV's federal trademark-dilution claim. We likewise affirm summary judgment to MOB on LV's state-law dilution claim. While N.Y. Gen. Bus. Law § 360–l does not provide an explicit fair-use defense, the manifest parodic use here precludes the requisite finding that the marks are "substantially similar." *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d at 114 (internal quotation marks omitted).

3. Copyright Infringement

MOB's parodic use of LV's designs produces a "new expression [and] message" that constitutes transformative use. *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. at 579 (alterations, citations, and internal quotation marks omitted); *accord TCA Television Corp. v. McCollum*, 839 F.3d 168, 180 (2d Cir. 2016). Like the district court, we

conclude that the remaining fair-use factors either weigh in MOB's favor or are irrelevant, *see Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d at 444–45, and LV's arguments to the contrary largely repeat or echo those we have already rejected.

Accordingly, we affirm the award of summary judgment to MOB on LV's copyright claim.

4. <u>Conclusion</u>

We have considered LV's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

